## UNITED STATES COURT OF INTERNATIONAL TRADE

BGH EDELSTAHL SIEGEN GMBH,

      Plaintiff,

v.

UNITED STATES,

      Defendant,

and

ELLWOOD CITY FORGE CO.,
ELLWOOD QUALITY STEELS CO.,
ELLWOOD NATIONAL STEEL CO.,
and A. FINKL & SONS,

      Defendant-Intervenors.

Before:  Mark A. Barnett, Chief Judge
Court No. 24-00176

**PUBLIC DOCUMENT**

## RESPONSE OF DEFENDANT-INTERVENORS IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Jack A. Levy, Esq.
Daniel J. Calhoun, Esq.
Paul K. Keith, Esq.
Noah A. Meyer, Esq.

**ROCK CREEK TRADE LLP**
900 19th Street, NW
Suite 600
Washington, DC 20006
(202) 230-6630

*Counsel for Defendant-Intervenors Ellwood City Forge Co., Ellwood Quality Steels Co., Ellwood National Steel Co., and A. Finkl & Son*

Dated:  June 6, 2025

Court No. 24-00176

## TABLE OF CONTENTS

Page

I.      RULE 56.2 STATEMENT ........................................................................... 2

        A.      Administrative Determination Under Review ...................................... 2

        B.      Issues Presented for Review ................................................................ 2

II.     STATEMENT OF FACTS ........................................................................... 2

        A.      Less-Than-Fair-Value Investigation .................................................... 3

        B.      2022 Administrative Review ................................................................ 6

III.    SUMMARY OF THE ARGUMENT .......................................................... 9

IV.     ARGUMENT ............................................................................................. 10

        A.      Standard of Review ............................................................................. 10

        B.      Defendant Correctly Argues That Commerce's Treatment of Forged Steel
                Bars and Customized Blocks as Foreign Like Product Is Supported by
                Substantial Evidence and in Accordance with Law .............................. 10

        C.      Subject Merchandise Is Defined by the Language of the Scope, Not a
                Product's Name.................................................................................... 11

        D.      Commerce's Findings from the Less-Than-Fair-Value Investigation Lend
                Further Support to Its Foreign Like Product Determination.................. 13

        E.      In Addition to Failing to Exhaust Administrative Remedies With Respect
                to the Requested Relief of Home Market Sales Adjustments, BGH
                Impermissibly Raises an Issue Not Pleaded in Its Complaint .............. 14

V.      CONCLUSION........................................................................................... 16

Court No. 24-00176

# TABLE OF AUTHORITIES

Page

**Statutes**

19 U.S.C. § 1673(1) .......................................................................................... 12

19 U.S.C. § 1677(16) ...........................................................................9-10, 12, 15

19 U.S.C § 1677(25) .......................................................................................11-13

19 U.S.C. § 1677b .............................................................................................. 15

**Regulations**

19 C.F.R. § 351.104(a)(6) ..................................................................................... 4

19 C.F.R. § 351.225(k)(1)(i) ............................................................................... 13

19 C.F.R. § 351.309(c)(2) ................................................................................... 14

**Court Decisions**

*King Supply Co., LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012) ................... *passim*

*New Image Global, Inc. v. United States*, 399 F.Supp.3d 1257 (Ct. Int'l Trade 2019) ............... 16

*OMG, Inc. v. United States*, 972 F.3d 1358 (Fed. Cir. 2020) ........................................ 11

*Smith Corona Corp. v. United States*, 915 F.2d 683 (Fed. Cir. 1990) ............................... 12

*SunPower Corp. v. United States*, 253 F.Supp.3d 1275 (Ct. Int'l Trade 2017) ...................... 12

*Target Corp. v. United States*, 609 F.3d 1352, 1363 (Fed. Cir. 2010) .............................. 12

**Administrative Determinations**

*Forged Steel Fluid End Blocks From the Federal Republic of Germany and Italy: Amended Final Antidumping Duty Determination for the Federal Republic of Germany and Antidumping Duty Orders*, 86 Fed. Reg. 7,528 (Dep't Commerce Jan. 29, 2021).........5-6, 8-11

*Forged Steel Fluid End Blocks From the Federal Republic of Germany: Final Determination of Sales at Less Than Fair Value*, 85 Fed. Reg. 80,018 (Dep't Commerce Dec. 11, 2020)........... 4

*Forged Steel Fluid End Blocks from Germany: Final Results of the Antidumping Duty Administrative Review; 2022*, 89 Fed. Reg. 67,072 (Dep't Commerce Aug. 19, 2024) ........ 2, 9

*Forged Steel Fluid End Blocks From the Federal Republic of Germany, India, and Italy: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 2,394 (Dep't Commerce Jan. 15, 2020) ................................................................................................................... 3

*Forged Steel Fluid End Blocks From the Federal Republic of Germany: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 44,513 (Dep't Commerce July 23, 2020) . 3-4

**Rulemaking**

*Regulations Improving and Strengthening the Enforcement of Trade Remedies Through the Administration of the Antidumping and Countervailing Duty Laws*, 89 Fed. Reg. 20,766 (Dep't Commerce Mar. 25, 2024) ............................................................................................ 4

**Rules of the U.S. Court of International Trade**

USCIT R. 8 .................................................................................................................... 15

USCIT R. 15(b)(2) ......................................................................................................... 16

USCIT R. 56.2 ............................................................................................................... 16

## UNITED STATES COURT OF INTERNATIONAL TRADE

BGH EDELSTAHL SIEGEN GMBH,

       Plaintiff,

v.

UNITED STATES,

       Defendant,

and

ELLWOOD CITY FORGE CO.,
ELLWOOD QUALITY STEELS CO.,
ELLWOOD NATIONAL STEEL CO.,
and A. FINKL & SONS,

       Defendant-Intervenors.

Before:  Mark A. Barnett, Chief Judge
Court No. 24-00176

**PUBLIC DOCUMENT**

### RESPONSE OF DEFENDANT-INTERVENORS IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

       Defendant-Intervenors Ellwood City Forge Co., Ellwood Quality Steels Co., Ellwood National Steel Co., and A. Finkl & Son respectfully submit this response in opposition to the motion for judgment on the administrative record filed by Plaintiff BGH Edelstahl Siegen GMbH ("BGH" or "Plaintiff").  BGH contests the final results issued by the U.S. Department of Commerce ("Commerce") in the 2022 administrative review of the antidumping duty order on forged steel fluid end blocks ("FEBs") from Germany.  For the reasons detailed below and in the response opposing BGH's motion filed by Defendant United States (dkt. 32),[1] the Court should deny BGH's motion and sustain Commerce's final results in their entirety.

---

[1] In accordance with the directions of the Court in its original Scheduling Order (dkt. 21), Defendant-Intervenors have made best efforts not to "repeat arguments made in earlier filed briefs."

## I.    RULE 56.2 STATEMENT

### A.  Administrative Determination Under Review

The administrative determination under review is Commerce's final results in the administrative review of the antidumping duty order on FEBs from Germany for the period January 1, 2022, through December 31, 2022.  *See Forged Steel Fluid End Blocks from Germany: Final Results of the Antidumping Duty Administrative Review; 2022*, 89 Fed. Reg. 67,072 (Dep't Commerce Aug. 19, 2024) ("*Final Results*") (P.R. 100),[2] and the accompanying Issues and Decision Memorandum ("IDM") (P.R. 99).

### B.  Issues Presented for Review

(1) Whether Commerce's determination to treat certain forged steel products as foreign like product included in BGH's home market sales to calculate normal value is supported by substantial evidence and is otherwise in accordance with law.

(2) In addition to whether BGH failed to exhaust administrative remedies with respect to its requested relief of an adjustment to account for the difference in product types in Commerce's dumping calculations, whether BGH waived that issue by not pleading it in its Complaint.

## II.   STATEMENT OF FACTS

Defendant in its response brief provides a thorough summary of most facts relevant to this action, which Defendant-Intervenors incorporate by reference to avoid repetition.  Def. Br. at 2-8.  However, Defendant-Intervenors wish to elaborate on certain key facts not fully developed in Defendant's response brief.

---

[2] "P.R. ___" refers to documents in the public record; "C.R. ___" refers to documents in the confidential record.

### A. Less-Than-Fair-Value Investigation

On December 19, 2019, Defendant-Intervenors filed in proper form antidumping duty petitions concerning imports of FEBs from Germany, India, and Italy. Commerce subsequently initiated antidumping duty investigations in response to the petitions on January 8, 2020. *See Forged Steel Fluid End Blocks From the Federal Republic of Germany, India, and Italy: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 2,394 (Dep't Commerce Jan. 15, 2020) (initiation notice). As is standard in investigation initiations, Commerce set aside an initial time period for interested parties to submit comments and factual information concerning the scope of the investigations. *See id.* at 2,395.

In response to comments from BGH arguing that "{a} forged steel block, not manufactured for the purpose of creating a fluid end block for a hydraulic pump, cannot be treated as an unfinished end block," Commerce determined in the context of its preliminary determination that "forged steel blocks meeting the specifications of fluid end blocks, as defined the in scope of the investigations, should be treated as fluid end blocks." *Forged Steel Fluid End Blocks From the Federal Republic of Germany: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 44,513 (Dep't Commerce July 23, 2020) ("*Preliminary Determination*"), and accompanying "Scope Comments Decision Memorandum for the Preliminary Determinations" (May 18, 2020) ("LTFV Preliminary Scope Decision Memorandum") (ACCESS Barcode: 3975461-01) at 6.[3] Commerce accordingly found "no basis to amend the scope as defined in the *Initiation Notices* with respect to forged steel blocks." *Id.* at 7.

---

[3] The *Preliminary Determination* specifically references and incorporates Commerce's findings from the LTFV Preliminary Scope Decision Memorandum. *See Preliminary Determination*, 85 Fed. Reg. at 44,513.

Commerce afforded interested parties an additional opportunity to comment on outstanding scope issues in the investigation through scope-dedicated case briefs. *See Preliminary Determination*, 85 Fed. Reg. at 44,513. In response to comments concerning forged steel blocks from the other mandatory respondent in the investigation, Schmiedewerke Gröditz GmbH, Commerce reaffirmed that the scope of the investigation "cover {*sic*} all products that meet the physical description of the scope and do not otherwise qualify for an exclusion." *Forged Steel Fluid End Blocks From the Federal Republic of Germany: Final Determination of Sales at Less Than Fair Value*, 85 Fed. Reg. 80,018 (Dep't Commerce Dec. 11, 2020) ("*Final Determination*"), and accompanying "Scope Comments Decision Memorandum for the Final Determinations" (Dec. 7, 2020) ("LTFV Final Scope Decision Memorandum") (ACCESS Barcode: 4064524-01) at 5.[4] Commerce once again found "no basis to amend the scope from that in the *Preliminary Determinations*." *Id.* at 6.

Following an affirmative material injury determination by the U.S. International Trade Commission ("ITC"), Commerce published the antidumping duty order on FEBs from Germany.

---

Commerce recently clarified through notice-and-comment rulemaking that "{p}reliminary and final issues and decision memoranda issued in investigations" are among certain unpublished documents originating with Commerce that may always be referenced by citation without placing the information on the administrative record. 19 C.F.R. § 351.104(a)(6) (2025); *see also Regulations Improving and Strengthening the Enforcement of Trade Remedies Through the Administration of the Antidumping and Countervailing Duty Laws*, 89 Fed. Reg. 20,766, 20,768-20,772 (Dep't Commerce Mar. 25, 2024) (final rule).

BGH cites to the same LTFV Preliminary Scope Decision Memorandum in its Rule 56.2 brief. *See* Pl. Br. at 25.

[4] The *Final Determination* specifically references and incorporates Commerce's findings from the LTFV Final Scope Decision Memorandum. *See Final Determination*, 85 Fed. Reg. at 80,018.

BGH cites to the same LTFV Final Scope Decision Memorandum in its Rule 56.2 brief. *See* Pl. Br. at 25.

*See Forged Steel Fluid End Blocks From the Federal Republic of Germany and Italy: Amended*

*Final Antidumping Duty Determination for the Federal Republic of Germany and Antidumping*

*Duty Orders*, 86 Fed. Reg. 7,528 (Dep't Commerce Jan. 29, 2021) ("*Order*").  The scope of the

*Order* is defined as follows:

> The products covered by these orders are forged steel fluid end blocks (fluid end blocks), whether in finished or unfinished form, and which are typically used in the manufacture or service of hydraulic pumps.
>
> The term "forged" is an industry term used to describe the grain texture of steel resulting from the application of localized compressive force.  Illustrative forging standards include, but are not limited to, American Society for Testing and Materials (ASTM) specifications A668 and A788.
>
> For purposes of these orders, the term "steel" denotes metal containing the following chemical elements, by weight: (i) Iron greater than or equal to 60 percent; (ii) nickel less than or equal to 8.5 percent; (iii) copper less than or equal to 6 percent; (iv) chromium greater than or equal to 0.4 percent, but less than or equal to 20 percent; and (v) molybdenum greater than or equal to 0.15 percent, but less than or equal to 3 percent.  Illustrative steel standards include, but are not limited to, American Iron and Steel Institute (AISI) or Society of Automotive Engineers (SAE) grades 4130, 4135, 4140, 4320, 4330, 4340, 8630, 15- 5, 17-4, F6NM, F22, F60, and XM25, as well as modified varieties of these grades.
>
> The products covered by these orders are: (1) Cut-to-length fluid end blocks with an actual height (measured from its highest point) of 8 inches (203.2 mm) to 40 inches (1,016.0 mm), an actual width (measured from its widest point) of 8 inches (203.2 mm) to 40 inches (1,016.0 mm), and an actual length (measured from its longest point) of 11 inches (279.4 mm) to 75 inches (1,905.0 mm); and (2) strings of fluid end blocks with an actual height (measured from its highest point) of 8 inches (203.2 mm) to 40 inches (1,016.0 mm), an actual width (measured from its widest point) of 8 inches (203.2 mm) to 40 inches (1,016.0 mm), and an actual length (measured from its longest point) up to 360 inches (9,144.0 mm).
>
> The products included in the scope of these orders have a tensile strength of at least 70 KSI (measured in accordance with ASTM A370) and a hardness of at least 140 HBW (measured in accordance with ASTM E10).
>
> A fluid end block may be imported in finished condition (*i.e.*, ready for incorporation into a pump fluid end assembly without further finishing operations) or unfinished condition (*i.e.*, forged but still requiring one or more finishing operations before it is ready for incorporation into a pump fluid end assembly).  Such finishing operations may include: (1) Heat treating; (2) milling one or more

flat surfaces; (3) contour machining to custom shapes or dimensions; (4) drilling or boring holes; (5) threading holes; and/or (6) painting, varnishing, or coating.

Excluded from the scope of these orders are fluid end block assemblies which (1) include (a) plungers and related housings, adapters, gaskets, seals, and packing nuts, (b) valves and related seats, springs. seals, and cover nuts, and (c) a discharge flange and related seals, and (2) are otherwise ready to be mated with the "power end" of a hydraulic pump without the need for installation of any plunger, valve, or discharge flange components, or any other further manufacturing operations.

The products included in the scope of these orders may enter under Harmonized Tariff Schedule of the United States (HTSUS) subheadings 7218.91.0030, 7218.99.0030, 7224.90.0015, 7224.90.0045, 7326.19.0010, 7326.90.8688, or 8413.91.9055. While these HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of the orders is dispositive.

*Order*, 86 Fed. Reg. at 7,530-31.

### B.  2022 Administrative Review

In January 2023, Defendant-Intervenors requested an administrative review of the *Order* with respect to BGH for the period covering calendar year 2022.  *See* Defendant-Intervenors' Letter, "Request for Administrative Review of Antidumping Duty Order" (Jan. 31, 2023) (P.R. 3).[5]  Following initiation, Commerce subsequently selected BGH as one of two mandatory respondents in the review.  *See* Commerce Memorandum, "Respondent Selection" (Apr. 18, 2023) (P.R. 22, C.R.5).  In its Section B questionnaire response, BGH excluded sales of certain products, including forged steel bars and customized blocks, from its reported home market sales during the period of review based primarily on their purported end use, although it did submit a separate database of what it claimed to be those excluded, "non-subject" transactions as part of the same response.  BGH Letter, "Response to Section B of the Antidumping Duty Questionnaire" (June 13, 2023) (P.R. 44, C.R. 19) at 9 and Appendices B-4 & B-5.  In deficiency comments, Defendant-Intervenors flagged that "Commerce has already determined that such

---

[5] BGH also requested an administrative review upon itself for the same period.  *See* BGH Letter, "Request for Administrative Review" (Jan. 31, 2023) (P.R. 2).

products are within scope" in the investigation. Defendant-Intervenors' Letter, "Petitioners'

Deficiency Comments on Sections A-D Questionnaire Responses of BGH Edelstahl Siegen

GmbH" (July 24, 2023) (P.R. 59, C.R. 39) at 7. Defendant-Intervenors thus requested that

Commerce confirm with BGH through a supplemental questionnaire whether the products it

claimed to be out of scope "meet the physical characteristics of the product scope definition" and

that Commerce direct BGH to include those transactions in a revised home market database. *Id.*

at 8-9. In a supplemental questionnaire response, BGH reiterated its position that "certain forged

steel blocks do not qualify as forged steel fluid end blocks even when they meet the chemical

elements and dimensions listed in the description of the products under review" and that "{t}his

is especially true of forged steel blocks that are produced according to specific customer

drawings and specifications demonstrating that the blocks are dedicated to the production of

specific products that are not fluid end blocks." BGH Letter, "Response to Sections A-C

Supplemental Questionnaire" (Dec. 12, 2023) (P.R. 71, C.R. 42) at 8-9.

Both BGH and Defendant-Intervenors submitted comments on the issue in advance of the

preliminary results. BGH once again asserted that "forged steel 'bars' are a fundamentally

different product from forged steel fluid end 'blocks'" in that "{f}orged steel 'bars' have very

different geometries from fluid end 'blocks,' and forged steel 'bars' are not and cannot be used

in the production of finished forged steel fluid end blocks." BGH Letter, "Comments for

Preliminary Results" (Dec. 20, 2023) (P.R. 73, C.R 60) at 2-3. Meanwhile, Defendant-

Intervenors' pre-preliminary-results comments urged Commerce to include all home market

sales that are expressly covered by the scope language in its preliminary dumping calculations

and made three key points:

> 1) The scope of the order included no "end-use" exclusionary language, and,
>    consistent with *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1348 (Fed.

Cir. 2012) ("*King Supply*"), end-use restrictions in scope language are "disfavored" unless the order includes "*clear exclusionary language*";

2) Relying on its findings from the less-than-fair-value investigation, Commerce should include all of BGH's home market sales meeting the physical description in the scope language regardless of customer in its product comparisons; and

3) BGH's home markets sales of forged steel bar should be included in the dumping comparison if the merchandise sold meets the physical description of the scope language.

*See* Defendant-Intervenors' Letter, "Petitioners' Pre-Preliminary Comments" (Jan. 5, 2024) (P.R. 75, C.R. 61) at 2-6 (original emphasis).

In the preliminary results, Commerce "relied on all products sold by BGH that fall within the scope of the *Order*" in determining normal value for its dumping comparisons. Commerce Memorandum, "Decision Memorandum for the Preliminary Results" (Jan. 31, 2024) (P.R. 84) at 7. Relying on the product description in the scope language, Commerce observed that BGH "does not claim that {forged steel bar} products fall outside the scope of this review in terms of the physical characteristics referenced in the scope description" and that "neither the scope of the *Order* nor the physical characteristics used for matching purposes refer to 'geometries' or to the end-use of the product." *Id.*

As summarized by Defendant in its response brief, BGH repeated its arguments that Commerce should not expand the scope of the review to include forged steel bars or forged steel blocks produced in accordance with customer drawings in both administrative briefing before the agency and a public hearing. Def. Br. at 6-7. Notably, BGH did not argue in its administrative case brief that, should Commerce continue to include the products requested to be excluded from reported home market sales in the final results, the agency should make an adjustment to account for the differences in product types in its dumping comparisons. *See generally* BGH Letter,

"Case Brief" (Mar. 8, 2024) ("BGH Case Brief") (P.R. 88, C.R. 84). In rebuttal before

Commerce, Defendant-Intervenors emphasized the following key points:

1) The scope language of the *Order* does not clearly exclude products based on end use, as required by *King Supply*;

2) Commerce should include all of BGH's home market sales meeting the physical description in the scope, regardless of customer, in its product comparisons; and

3) On the basis of its findings in the less-than-fair value investigation, Commerce should continue to follow established precedent in considering all of BGH's home market sales in its dumping calculations.

*See* Defendant-Intervenors' Letter, "Petitioners' Rebuttal Brief" (Mar. 15, 2024) (P.R. 89) at 2-7.

As summarized by Defendant in its response brief, Commerce continued to consider all

reported home market sales meeting the physical description of the scope language as part of its

normal value calculations in the *Final Results*. Def. Br. at 6-7. Notably, Commerce's analysis

relied on the definition of "foreign like product" at 19 U.S.C. § 1677(16) and the interplay of that

definition with the scope of the *Order* (P.R. 89). *See* IDM (P.R. 99) at 5-8. Commerce reiterated

that "the physical characteristics themselves are controlling in determining 'the subject

merchandise,' not the end-use" and continued to find that the "language of the scope is

dispositive, and that BGH's bars and custom blocks are in-scope and appropriate for use in the

dumping margin calculations." *Id.* at 7. Commerce therefore found that "the products at issue

are foreign like products within the meaning of {19 U.S.C. § 1677(16)(A)} and … included them

in the calculation of normal value" *Id.* at 8.

## III.    SUMMARY OF THE ARGUMENT

For the reasons outlined by Defendant in its response brief and by Defendant-Intervenors

below, Commerce appropriately considered all of BGH's home market sales in calculating

BGH's dumping margin in the contested administrative review. There is no dispute among the

parties that the forged steel bars and customized blocks that BGH seeks to exclude from

Commerce's normal value calculations meet the physical descriptions and specifications of the

scope language of the *Order*.  Nor does the scope language include an explicit end-use

requirement or restriction as required by the U.S. Court of Appeals for the Federal Circuit in

*King Supply*.  *See* 674 F.3d at 1349.  Consistent with its initial findings in the less-than-fair value

investigation, Commerce did not err in designating BGH's forged steel bars and customized

blocks as "foreign like product" pursuant to 19 U.S.C. § 1677(16).

Additionally, not only did BGH fail to exhaust administrative remedies before Commerce

with respect to the alternative relief it now seeks of home market sales adjustments, but also it

has waived the issue by not raising the claim in its Complaint.

## IV.    ARGUMENT

Defendant-Intervenors endorse and incorporate by reference the various legal and factual

arguments presented in Defendant's response brief.  Def. Br. at 9-20.  Defendant-Intervenors use

the opportunity of its response brief to make or elaborate upon different arguments not fully

developed in Defendant's response brief.

### A.    Standard of Review

Defendant-Intervenors accept and incorporate by reference Defendant's characterization

of the standard of review in this action as set forth in its response brief.  Def. Br. at 9-10.

### B.    Defendant Correctly Argues That Commerce's Treatment of Forged Steel Bars and Customized Blocks as Foreign Like Product Is Supported by Substantial Evidence and in Accordance with Law

Defendant-Intervenors agree with and incorporate by reference the main substantive

arguments set forth in Defendant's response brief, which can be summarized as follows:

- The proper legal framework considers whether BGH's products at issue constitute "foreign like product," which is defined by 19 U.S.C. § 1677(16) as merchandise that is identical to, or similar to, the scope of an order.  Def. Br. at 10.

- It is undisputed that the forged steel bars and customized blocks BGH seeks to exclude from the normal value calculations meet the physical descriptions and specifications set forth in the scope of *Order*.  Def. Br. at 12.

- The scope language of the *Order* does not include an end-use requirement.  Def. Br. at 12.

- Pursuant to *King Supply*, 674 F.3d at 1349, any end-use restriction must be identified in "clear exclusionary language" that "leave{s} no reasonable doubt that certain products were intended to be outside the scope of the {antidumping duty} order based solely on the end use of those products."  Def. Br. at 13.

- Because Commerce determined that the "language of the scope description itself is dispositive," the agency had "no need to resort to an examination of the other documentation cited by BGH, such as ITC reports and transcripts."  Def. Br. at 13 (citing IDM (P.R. 99) at  7, n.17).

- BGH's reliance on *OMG, Inc. v. United States*, 972 F.3d 1358, 1364-65 (Fed. Cir. 2020) ("*OMG*"), is misplaced because, unlike in the present case, the product at issue in *OMG* did not meet the physical descriptions and specifications of the unambiguous language of the scope of the order (dkt. 32 at 14-15).

Defendant-Intervenors made many of those same arguments before Commerce in its deficiency comments (P.R. 59, C.R. 39), pre-preliminary-results comments (P.R. 75. C.R. 61), and administrative rebuttal brief (PR 89), and now join Defendant in adopting those arguments in defense of the *Final Results*.

## C.  Subject Merchandise Is Defined by the Language of the Scope, Not a Product's Name

Although Defendant does argue that "the definition 'fluid end blocks' for purposes of antidumping duties, {*sic*} is the scope," Def. Br. at 15 (citing 19 U.S.C § 1677(25)), Defendant-Intervenors seek to elaborate further upon this pure point of law.  In seeking to exclude certain products meeting the scope description from the normal value calculation, BGH operates from the mistaken premise that the name of a product — or what the product is called — somehow determines whether it is within the scope of an order.  *E.g.*, BGH Br. at 9 ("Therefore, the product description must be understood as applying the plain, common meaning of 'fluid end

blocks.'") and 17 ("Therefore, in order to be considered products under review, a product must comport with the common meaning of a 'fluid end block.'").  That belief fundamentally misconstrues the operation of the trade remedy laws.

From Commerce's perspective, the primary function of the antidumping duty law is to determine whether "a *class or kind of foreign merchandise* is being, or is likely to be, sold in the United States at less than its fair value."  19 U.S.C. § 1673(1) (emphasis added).  The statutory scheme's focus on "class or kind" is best found in how the term "subject merchandise," as used in the definition of "foreign like product" at 19 U.S.C. § 1677(16) and elsewhere in the statute, is defined as "the *class or kind of merchandise* that is within the scope of an investigation, a review, a suspension agreement, an order under this subtitle or section 1303 of this title, or a finding under the Antidumping Act, 1921."  19 U.S.C. § 1677(25) (emphasis added).  That definition of subject merchandise thus "provides that *the scope of a proceeding establishes the 'class or kind of merchandise.'*"  *SunPower Corp. v. United States*, 253 F.Supp.3d 1275, 1286 (Ct. Int'l Trade 2017) (emphasis added).  Accordingly, "{b}ecause the statute refers to the 'class or kind of merchandise' that is within the scope, *one must look to the scope itself to find the parameters of the 'class or kind of merchandise*.'"  *Id.* (emphasis added).  As this Court previously observed, "{p}recedent from the Court of Appeals for the Federal Circuit supports an interpretation of 'class or kind of merchandise' as proceeding-specific."  *Id.* (citing *Target Corp. v. United States*, 609 F.3d 1352, 1363 (Fed. Cir. 2010) (noting, in the context of later-developed goods not specifically excluded in the order, that "{t}he kind or class of merchandise encompassed by a final antidumping order is determined by the order," citing *Smith Corona Corp. v. United States*, 915 F.2d 683, 685 (Fed. Cir. 1990) (explaining that "{t}he class or kind of merchandise encompassed by a final antidumping order is determined by the order")).

BGH's proposed analytical approach in this case would put the proverbial cart before the horse. Rather than relying on the scope language to define the "class or kind" of merchandise administratively referred to as "forged steel fluid end blocks" for purposes of the antidumping duty proceeding, BGH places primacy on its understanding of what is meant by the term "fluid end blocks" to the disregard of the rest of the scope language, which, by statute, defines the "class or kind" of merchandise under consideration. *See* 19 U.S.C. § 1677(25). Here, where there is no dispute that the products at issue meet the physical descriptions and specifications of the scope language, there likewise can be no dispute that Commerce properly considered BGH's forged steel bars and customized blocks to meet the statutory definition of "foreign like product" when comparing normal value to export price.

### D. Commerce's Findings from the Less-Than-Fair-Value Investigation Lend Further Support to Its Foreign Like Product Determination

Because Commerce found the "the language of the scope description itself" to be "dispositive" in treating BGH's forged steel bars and customized blocks as foreign like product, it was not necessary for Commerce to examine other documentation in reaching its determination. IDM (P.R. 99) at 7, n.17. However, the manner in which Commerce addressed the same issue in the less-than-fair-value investigation corroborates its foreign like product determination in the 2022 administrative review.

"In determining whether a product is covered by the scope of the order at issue," 19 C.F.R. § 351.225(k)(1)(i) permits Commerce to "take into account" certain interpretative sources, including "{t}he descriptions of the merchandise contained in the initial investigation pertaining to the order at issue," should evaluation of the scope language not prove dispositive. 19 C.F.R. § 351.225(k)(1)(i)(B). As noted above, the issue of whether a "forged steel block" is within scope arose in the less-than-fair-value investigation. Commerce determined in the context

of the *Preliminary Determination* that "forged steel blocks meeting the specifications of fluid

end blocks, as defined the in scope of the investigations, should be treated as fluid end blocks."

LTFV Preliminary Scope Decision Memorandum at 6.  As part of the *Final Determination*,

Commerce reaffirmed that the scope of the investigation "cover {sic} all products that meet the

physical description of the scope and do not otherwise qualify for an exclusion."  LTFV Final

Scope Decision Memorandum at 5.

Though not dispositive because Commerce made its determination based on the

unambiguous language of the scope, Commerce's findings from the less-than-fair-value

investigation nonetheless lend additional support to its determination in the 2022 administrative

review and speak to the fact that BGH had been on notice since the investigation that such

products should have been reported as part of BGH's home market sales.

### E.  In Addition to Failing to Exhaust Administrative Remedies With Respect to the Requested Relief of Home Market Sales Adjustments, BGH Impermissibly Raises an Issue Not Pleaded in Its Complaint

Defendant-Intervenors agree with and incorporate by reference the Defendant's

arguments from its response brief that BGH failed to exhaust administrative remedies with

respect to its alternative argument that Commerce should have accounted for the differences in

product types when calculating the dumping margin.  BGH Br. at 26-31; Def. Br. at 17-20.  BGH

never raised that issue in its administrative case brief, which it was required to do pursuant to

Commerce's regulations.  *See generally* BGH Case Brief (P.R. 88, C.R. 84); *see also* 19 C.F.R.

§ 351.309(c)(2) ("The case brief must present all arguments that continue in the submitter's view

to be relevant to the Secretary's final determination or final results, including any arguments

presented before the date of publication of the preliminary determination or preliminary

results.").  For the reasons detailed in Defendant's response brief related to both the exhaustion

doctrine and Commerce's standard practice to consider modifications to the model match

hierarchy early in a segment of a proceeding, the Court should not consider BGH's alternative prayer for relief.

Furthermore, BGH failed to raise its alternative prayer for relief in its Complaint (dkt. 7), thereby waiving this issue for consideration by the Court.  Rule 8 of the Rules of the U.S. Court of International Trade ("USCIT") states that "{a} pleading that states a claim for relief must contain: … (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."  USCIT R. 8(a).  An examination of BGH's Complaint reveals no mention of an alternative remedy of Commerce adjusting home market sales to account for product differences purportedly unique to forged steel bars and customized blocks.  BGH's Count I alleges, "Commerce's determination that forged steel bars and forged steel blocks produced according to specific customer drawings for non-FEB products should be included within the definition of 'foreign like product' under 19 U.S.C. § 1677(16)(A) and used in the calculation of normal value under 19 U.S.C. § 1677b is not supported by substantial evidence on the administrative record and is otherwise not in accordance with law."  Complaint ¶ 14.  BGH's Count II asserts, "To the extent that Commerce's determination is based upon a finding that the scope of this review includes all forged steel bars and forged steel blocks regardless of production method, use or design, that finding is not supported by substantial evidence on the administrative record and is otherwise not in accordance with law."  Complaint ¶ 25.  Lastly, BGH's Count III posits, "Commerce's matching of home market sales of forged blocks made according to specific customer drawings and specifications for the manufacture of military equipment and machines to produce plastics is not supported by substantial evidence on the administrative record and otherwise not in accordance with law."  Complaint ¶ 30.  All of the

Counts from BGH's Complaint pertain exclusively to the requested relief of excluding certain home market sales from Commerce's dumping calculations, not making adjustments to account for any product differences.

In such a situation, Rule 15(b)(2) of the Rules of the USCIT would apply.  *See New Image Global, Inc. v. United States*, 399 F.Supp.3d 1257, 1263-64 (Ct. Int'l Trade 2019) ("*New Image Global*").  Rule 15(b)(2) states, "When an issue not raised by the pleadings is tried by the parties' express or implied consent it will be treated in all respects as if it had been raised in the pleadings."  In a summary judgment context, the Court in *New Image Global* concluded, "in the interests of ruling on issues fairly presented, that the majority approach of applying Rule 15(b)(2) when a party raises an unpled issue at the summary judgment stage is the proper course of action so long as the opposing party consents, implicitly or explicitly, to argue the issue."  *Id.* The same standard should apply in the similar context of a motion for judgment on the administrative record pursuant to Rule 56.2 of the USCIT Rules.

Under that standard, Defendant-Intervenors register their express opposition and objection to BGH raising an unpled issue in the brief accompanying its motion.  Because BGH failed to identify the issue of home market sales adjustments in its Complaint, the Court should consider that issue waived on that stand-alone basis.

## V.    CONCLUSION

For the above-stated reasons, Defendant-Intervenors respectfully request that the Court deny BGH's motion for judgment on the agency record and sustain Commerce's *Final Results* in their entirety.

Respectfully submitted,

/s/ Daniel J. Calhoun

Jack A. Levy, Esq.
Daniel J. Calhoun, Esq.
Paul K. Keith, Esq.
Noah A. Meyer, Esq.

ROCK CREEK TRADE LLP
900 19th Street NW, Suite 600
Washington, DC  20006
(202) 297-8860
dcalhoun@rockcreektrade.com

Dated:  June 6, 2025

*Counsel for Defendant-Intervenors Ellwood
City Forge Company, Ellwood Quality
Steels Company, Ellwood National Steel
Company, and A. Finkl & Sons*

**<u>Certificate of Compliance Pursuant to Chambers Procedures 2(B)(2)</u>**

The undersigned hereby certifies that the foregoing brief contains 4,981 words according to the "Word Count" function of Microsoft Word for Microsoft 365, exclusive of the caption block, table of contents, table of authorities, signature block, and certificates of counsel, and therefore complies with the maximum 5,000 word count limitation set forth in the Court's Amended Scheduling Order (dkt. 24) and the Standard Chambers Procedures of the U.S. Court of International Trade.

By:     <u>/s/ Daniel J. Calhoun</u>

Daniel J. Calhoun

**CERTIFICATION OF SERVICE**

*PUBLIC SERVICE*

*BGH Edelstahl Siegen GMbH v. United States*
Court 24-00176

  This is to certify that on June 6, 2025, I have caused a copy of the foregoing **RESPONSE OF DEFENDANT-INTERVENORS IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD** to be electronically served upon the following parties via the Court's CM/ECF electronic filing system:

| | |
|---|---|
| Marc. E. Montalbine | Stephen C. Tosini |
| *Counsel for Plaintiff* | *Counsel for Defendant United States* |
| *BGH Edelstahl Siegen GMbH* | **U.S. Department of Justice** |
| **deKieffer & Horgan, PLLC** | Commercial Litigation Branch – Civil Division |
| 1015 Fifteenth Street NW | P.O. Box 480 |
| 6th Floor | Ben Franklin Station |
| Washington, DC  20005 | Washington, DC  20044 |
| montalbine@dhlaw.de | stephen.tosini@usdoj.gov |

         /s/ Daniel J. Calhoun

         Daniel J. Calhoun, Esq.

         ROCK CREEK TRADE LLP
         900 19th Street NW, Suite 600
         Washington, DC  20006
         (202) 297-8860
         dcalhoun@rockcreektrade.com